JUDGE CASTEL

'09 CIV 7842

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

AMARANTE SHIPPING PTE LTD.,

              Plaintiff,

    - against -

KOTHARI PRODUCTS LTD,

              Defendant.

---------------------------------------------------------------X

09 Civ.

ECF

RECEIVED
SEP 11 2009
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, AMARANTE SHIPPING PTE LTD. (hereinafter "Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, KOTHARI PRODUCTS LTD., (hereinafter "Defendant") alleges, upon information and

belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  This claim involves the breach

of maritime contract of charter.  This matter also arises under the Court's federal question

jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the

Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law with a principal place of business in

Singapore.

3.    At all material times to this action, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Mumbai, India.

4.    Plaintiff was the disponent owner of the M/V THAMISSA NAREE ("the Vessel"), a bulk carrier engaged in the ocean carriage of bulk cargoes.

5.    By way of a charter party dated July 15, 2009 (hereinafter "Charter Party") Plaintiff voyage chartered the Vessel to Defendant to carry a cargo of "FULL AND COMPLETE IRON ORES FINES IN BULK" for a voyage from 1 safe port in New Mangalore in India to 1 safe port China Main Sea Port. *See Charter Party annexed hereto as Exhibits 1.*

6.    Plaintiff delivered the Vessel to Defendant at the load port as required by the Charter Party where the Vessel was in all respects ready for loading Defendant's cargo.

7.    A dispute has arisen between Plaintiff and Defendant concerning delays incurred by the Vessel at the load port.

8.    Pursuant to Box 20 of the GENCON charter party form, and pursuant to Rider Clause 27, the demurrage rate to be paid by Defendant, *i.e.* a liquefied damages provision for delays incurred at the load and/or discharge ports, is $12,000 per day.

9.    Similarly, Rider Clause 27 also provided, in part, as follows: "CHARTRS SHIPPERS AND/OR RECEIVERS SHOULD GET CARGO CERTIFICATES SHOWING TML FMP AND MOISTURE OF THE CARGO TO BE LOADED AND PRESENTED TO THE OWNERS PRIOR LOADING SHOWING PROPER DATES AND TEST METHODS AS PER INTERNATIONAL REGULATIONS[.]   IF CHARTERS AND SHIPPERS FAIL TO PRESENT SUCH CERT RESULTING IN FAILURE OF BERTHING AND/OR LOADING OR STOPPING OF LOADING BY MASTER OF THE CARGO ON BOARD AT LOAD PORT, CHARTS

2

SHALL PAY FOR DAMAGE OF DETENTION AT THE RATE OF USD 24000 PDPR AND
ALL COSTS INCURRED, IF ANY DUE TO THE SAME, INCLUDING PORT CHARGES WILL
BE ON ACCOUNT OF THE CHRTRS."

10.    "TML" as used in Clause 27 refers to Transportable Moisture Limit. "FMP" refers
to Flow Moisture Point. These terms concern the risk of loading certain bulk cargoes, such as iron
ore fines, that have a tendency to liquefy. Transportable Moisture Limit is defined as 90% of the
Flow Moisture Point. The difference is intended as a safety margin to protect against uncertainties
in testing. The Flow Moisture Point is critical because the smallest amount of excess moisture can
cause liquefaction of the cargo. Pursuant to Rider Clause 27, Defendant was required to certify the
transportable moisture limit before the start of loading. No cargo can be accepted for loading
without valid certificates.

11.    The Vessel experienced significant delays at the load port as a result of *inter alia*
Defendant's failure to provide TML certificates and berthing congestion. Pursuant to the charter
party, Defendant is liable to Plaintiff for damages resulting from these load port delays.

12.    Pursuant to Box 20 and Rider Clause 27, Defendant is liable to pay detention
damages for delays caused by Defendant's failure to present TML certificates and cargo
certification at the rate of $24,000 per day. Additionally, Defendant is liable to pay demurrage to
Plaintiff for other delays incurred at the load port at the rate of $12,000 per day. Pursuant to the
attached laytime calculations, Defendant is liable to Plaintiff for detention, none of which has been
paid, in the amount of $709,000 (i.e. 29 days, 13 minutes multiplied by $24,000 per day).
Defendant is also liable to Plaintiff for demurrage, none of which has been paid, in the amount of
$263,800 (i.e. 21 days, 23 minutes and 36 seconds multiplied by $12,000 per day).

3

13.     The combined total of unpaid detention and demurrage owed by Defendant to Plaintiff is $972,800 (i.e. $709,000 detention plus $263,800 demurrage).

14.     Disputes have arisen between Plaintiff and Defendant concerning Defendant's breach of the charter party by failing to remit to Plaintiff unpaid detention and demurrage in the amount of $972,800.

15.     As a result of Defendant's breach of the Charter Party as aforesaid, Plaintiff has suffered damages in the principal amount of $972,800.  Despite Plaintiff's performance of its contractual obligations, Defendant has failed to remit to Plaintiff any amounts for earned detention and demurrage.

16.     Pursuant to Charter Party Rider Clause 27, Defendant is required to pay freight to Plaintiff in United States Dollars and to effect payments via electronic funds transfer to Plaintiff's designated account via New York, New York.

17.     Pursuant to the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply.  Plaintiff is currently preparing to commence London arbitration proceedings against Defendant and shall do so shortly.

18.     This action is brought in order to obtain jurisdiction over the Defendant and also to obtain security for Plaintiff's claims and in aid of the London arbitration.

19.     Costs and attorneys' fees are routinely awarded to the prevailing party under English Law.  Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

20.     As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

a.      Plaintiff's Principal Claim for Unpaid Detention and Demurrage:   $972,800;

| b. | Estimated recoverable legal fees: | $100,000; |
| c. | Estimated arbitration costs and arbitrators' fees: | $25,000; |
| **Total:** | | **$1,097,800.** |

21.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "3".*

22.     Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount of $1,097,800 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

      D.     That in the alternative, this Court enter judgment against Defendant on the claims set forth herein;

      E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

      F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

      G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: September 9, 2009

The Plaintiff,
AMARANTE SHIPPING PTE LTD.

By: _Charles E. Murphy_
Charles E. Murphy
Nancy R. Siegel
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com
nrs@lenmur.com

6

## ATTORNEY'S VERIFICATION

1.      My name is Charles E. Murphy.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:  September 9, 2009

Charles E. Murphy

7

# EXHIBIT 1

| 1.Shipbroker<br><br>DE LONG M & L PTE LTD<br>SINGAPORE | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 AND 1994)<br>(To be used for trades for which no specially approved form in force)<br>CODE NAME "GENCON" Part I |
|---|---|
| | 2.Place and date<br>SINGAPORE 15TH JULY 2009 |
| 3.Owners/Place of business (Cl. 1)<br>AMARANTE SHIPPING PTE LTD<br>10 ANSON ROAD, #27-13 INTERNATIONAL PLAZA,<br>SINGAPORE 079903 | 4.Charterers / Place of Business (Cl. 1)<br>KOTHARI PRODUCTS LTD. :<br>373, Konark House -near Sarvarkar Road, Ground Floor,<br>Near Sidhivinayak Temple, Prabhadevi, Dadar-West<br>Mumbai- 400 028 india |
| 5.Vessel's Name (Cl. 1)<br>MV THAMISSA NAREE | 6.GT/NT (Cl. 1)<br>20232 / 12473 |
| 7.DWT all told on summer load line in metric tons   (abt.)<br>(Cl.1)<br>34072 MT / 10.765 MTRS | 8.Present Position (Cl.1)<br>IN BALLAST |
| 9.Expected ready to load (abt.) (Cl.1)    16TH JULY 2009 | |
| 10.Loading Port or place (Cl. 1)<br>1SAFE PORT 1/2 SAFE BERTH NEW MANGALORE | 11.Discharging port or place (Cl. 1) – EXCLUDING RIVER PORT<br>1 SAFE PORT 1 / 2 SAFE BERTH CHINA MAIN SEA PORT.<br>DISCH PORT TO BE DECLARED 3 DAY PRIOR PASSING SINGAPORE |
| 12.Cargo (also state quantity and margin in Owner's option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl.1)<br>FULL AND COMPLETE IRON ORES IN FINES  IN BULK | |
| 13.Freight rate (also state whether freight prepaid or payable<br>on delivery (Cl.4)<br>USD 17.25  PMT FIOST | 14.Freight payment (state currency and method of payment,<br>also beneficiary and bank account) (Cl.4)SEE RIDER CLAUSE 27 |
| 15.State if vessel's cargo handling gear shall not be used (Cl.<br>5) | 16.Laytime (if separate laytime for load. and disch. is agreed, fill in a)<br>and b). If total laytime for load  And disch, fill in c) only (Cl. 6) |
| 17.Shippers/Place of Business<br>KOTHARI PRODUCTS ltd  - INDIA | a) Laytime for loading : 12000TS PWWD SHINC |
| 18.Agents (Loading) (Cl. 5) OWNERS AGENTS AT<br>LOADING PORT – ALSO SEE CLAUSE NO.35 | b) Laytime for discharging : 12000 TS PWWD SHINC |
| 19.Agents (Discharging) (Cl.6) OWNERS AGENTS AT<br>DISCHARGE PORT – ALSO SEE CLAUSE NO.62 | c) Total laytime for loading and discharging |
| 20.Demurrage / Detention rate and manner payable<br>(Loading) & discharging)  (Cl.7)<br><br>DEMURRAGE USD 120000 PDPR DHD WTS BENDS.<br>LOAD PORT DEMM PAYABLE TOGETHER WITH<br>FREIGHT | 21.Canceling date<br>18TH JULY  2009 |
| | 22.General Average to be adjusted at (Cl.12) |
| 23.Freight Tax (state if for the Owner's Account    (Cl. 13 (c))<br>N/A | 24.Brokerage commission and to whom payable (Cl. 15)<br>1.25%  ADCOM |
| 25.Law and Arbitration (state 19 (a) or 19 (b) or  19 (c) of Cl.<br>19; if 19 (c) agreed Also state  Place of Arbitration (if not<br>filled in 19 (a) shall apply) (Cl.19)<br>ARBITRATION IN LONDON  AS PER L.M.A.A. RULES<br>AND UNDER ENGLISH LAW INCL SMALL CLAIMS<br>PROCEDURE | |
| (a)  State  maximum  amount  for  small  claims/shortened<br>arbitration (Cl. 19) | 26.Additional clauses covering special provisions, if  agreed<br><br>RIDER CLAUSES 27 TO 65 AS ATTACHED DEEMED TO BE<br>FULLY INCORPORATED IN THIS CHARTER PARTY. |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party, which shall include Part I as well as Part II. In the event of a conflict of conditions, the provision of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>FOR AMARANTE SHIPPING PTE LTD<br><br><br><br><br>AUTHORISED SIGNATORY | Signature (Charterers)<br>FOR KOTHARI PRODUCTS LTD<br><br><br><br><br>AUTHORISED SIGNATORY |
|---|---|

PART II

"Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel
named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number
of metric tons of deadweight capacity all told on summer loadline stated in Box
7, now in position as stated in Box 8 and expected ready to load under this
Charter Party about the date indicated in Box 9, and the party mentioned as the
Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed,
proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as
she may safely get and lie always afloat, and there load a full and complete
cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and
responsibility) as stated in Box 12, which the Charterers bind themselves to
ship, and being so loaded the Vessel shall proceed to the discharging port(s) or
place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near
thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. Owners' Responsibility Clause
The Owners are to be responsible for loss of or damage to the goods or for
delay in delivery of the goods only in case the loss, damage or delay has been
caused by personal want of due diligence on the part of the Owners or their
Manager to make the Vessel in all respects seaworthy and to secure that she is
properly manned, equipped and supplied, or by the personal act or default of
the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any
other cause whatsoever, even from the neglect or default of the Master or crew
or some other person employed by the Owners on board or ashore for whose
acts they would, but for this Clause, be responsible, or from unseaworthiness of
the Vessel on loading or commencement of the voyage or at any time
whatsoever.

3. Deviation Clause
The Vessel has liberty to call at any port or ports in any order, for any purpose,
to sail without pilots, to tow and/or assist Vessels in all situations, and also to
deviate for the purpose of saving life and/or property.

4. Payment of Freight (see rider clause )
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the
intaken quantity of cargo.
(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be
deemed earned and non-returnable, Vessel and/or cargo lost or not lost.
Neither the Owners nor their agents shall be required to sign or endorse bills of
lading showing freight prepaid unless the freight due to the Owners has
actually been paid.
(c) On delivery. If according to Box 13 freight, or part thereof, is payable at
destination, it shall not be deemed earned until the cargo is thus delivered.
Notwithstanding the provisions under (a), if freight or part thereof is payable on
delivery of the cargo the Charterers shall have the option of paying the freight
on delivered weight/quantity provided such option is declared before breaking
bulk and the weight/quantity can be ascertained by official weighing machine,
joint draft survey or tally.
Cash for Vessel's ordinary disbursements at the port of loading to be advanced
by the Charterers, if required, at highest current rate of exchange, subject to
two (2) per cent. to cover insurance and other expenses.

5. Loading/Discharging (see rider clause )
(a) Costs/Risks
The cargo shall be brought into the holds, loaded, stowed and/or trimmed,
tallied, lashed and/or secured and taken from the holds and discharged by the
Charterers, free of any risk, liability and expense whatsoever to the Owners.
The Charterers shall provide and lay all dunnage material as required for the
proper stowage and protection of the cargo on board, the Owners allowing the
use of all dunnage available on board. The Charterers shall be responsible for
and pay the cost of removing their dunnage after discharge of the cargo under
this Charter Party and time to count until dunnage has been removed.
(b) Cargo Handling Gear
Unless the Vessel is gearless or unless it has been agreed between the parties
that the Vessel's gear shall not be used and stated as such in Box 15, the
Owners shall throughout the duration of loading/discharging give free use of
the Vessel's cargo handling gear and of sufficient motive power to operate all
such cargo handling gear. All such equipment to be in good working order.
Unless caused by negligence of the stevedores, time lost by breakdown of the
Vessel's cargo handling gear or motive power - pro rata the total number of
cranes/winches required at that time for the loading/discharging of cargo
under this Charter Party - shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from
the crew to operate the Vessel's cargo handling gear, unless local regulations
prohibit this, in which latter event shore labourers shall be for the account of the
Charterers. Cranemen/winchmen shall be under the Charterers' risk and
responsibility and as stevedores to be deemed as their servants but shall
always work under the supervision of the Master.
(c) Stevedore Damage
The Charterers shall be responsible for damage (beyond ordinary wear and
tear) to any part of the Vessel caused by Stevedores. Such damage shall be
notified as soon as reasonably possible by the Master to the Charterers or their
agents and to their Stevedores, failing which the Charterers shall not be held
responsible. The Master shall endeavour to obtain the Stevedores' written
acknowledgement of liability.
The Charterers are obliged to repair any stevedore damage prior to completion
of the voyage, but must repair stevedore damage affecting the Vessel's
seaworthiness or class before the Vessel sails from the port where such
damage was caused or found. All additional expenses incurred shall be for the
account of the Charterers and any time lost shall be for the account of and shall
be paid to the Owners by the Charterers at the demurrage rate.

6. Laytime (see rider clause )
* (a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running days/hours as
indicated in Box 16, weather permitting, Sundays and holidays excepted,
unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as
indicated in Box 16, weather permitting, Sundays and holidays excepted,
unless used, in which event time used shall count.
* (b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running
days/hours as indicated in Box 16, weather permitting, Sundays and holidays
excepted, unless used, in which event time used shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 13.00 hours, if notice of
readiness is given up to and including 12.00 hours, and at 06.00 hours next
working day if notice given during office hours after 12.00 hours. Notice of

readiness at loading port to be given to the Shippers named in Box 17 or if not
named, to the Charterers or their agents named in Box 18. Notice of readiness
at the discharging port to be given to the Receivers or, if not known, to the
Charterers or their agents named in Box 19.
If the loading/discharging berth is not available on the Vessel's arrival at or off
the port of loading/discharging, the Vessel shall be entitled to give notice of
readiness within ordinary office hours on arrival there, whether in free pratique
or not, whether customs cleared or not. Laytime or time on demurrage shall
then count as if she were in berth and in all respects ready for loading/
discharging provided that the Master warrants that she is in fact ready in all
respects. Time used in moving from the place of waiting to the loading/
discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/
discharge time lost after the discovery thereof until the Vessel is again ready to
load/discharge shall not count as laytime.
Time used before commencement of laytime shall count.
* Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage
Demurrage at the loading and discharging port is payable by the Charterers at
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for
any part of a day. Demurrage shall fall due day by day and shall be payable
upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the
Owners shall give the Charterers 96 running hours written notice to rectify the
failure. If the demurrage is not paid at the expiration of this time limit and if the
vessel is in or at the loading port, the Owners are entitled at any time to
terminate the Charter Party and claim damages for any losses caused thereby.

8. Lien Clause
The Owners shall have a lien on the cargo and on all sub-freights payable in
respect of the cargo, for freight, deadfreight, demurrage, claims for damages
and for all other amounts due under this Charter Party including costs of
recovering same.

9. Cancelling Clause
(a) Should the Vessel not be ready to load (whether in berth or not) on the
cancelling date indicated in Box 21, the Charterers shall have the option of
cancelling the Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence,
the Vessel will not be ready to load by the cancelling date, they shall notify the
Charterers thereof without delay stating the expected date of the Vessel's
readiness to load and asking whether the Charterers will exercise their option
of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after
the receipt of the Owners' notice. If the Charterers do not exercise their option
of cancelling, then this Charter Party shall be deemed to be amended such that
the seventh day after the new readiness date stated in the Owners' notification
to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in
case of the Vessel's further delay, the Charterers shall have the option of
cancelling the Charter Party as per sub-clause (a) of this Clause.

10. Bills of Lading (see rider clause )
Bills of Lading shall be presented and signed by the Master as per the
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter
Party, or by the Owners' agents provided written authority has been given by
Owners to the agents, a copy of which is to be furnished to the Charterers. The
Charterers shall indemnify the Owners against all consequences or liabilities
that may arise from the signing of bills of lading as presented to the extent that
the terms or contents of such bills of lading impose or result in the imposition of
more onerous liabilities upon the Owners than those assumed by the Owners
under this Charter Party.

11. Both-to-Blame Collision Clause
If the Vessel comes into collision with another vessel as a result of the
negligence of the other vessel and any act, neglect or default of the Master,
Mariner, Pilot or the servants of the Owners in the navigation or in the
management of the Vessel, the owners of the cargo carried hereunder will
indemnify the Owners against all loss or liability to the other or non-carrying
vessel or her owners in so far as such loss or liability represents loss of,
damage to, or any claim whatsoever of the owners of said cargo, paid or
payable by the other or non-carrying vessel or her owners to the owners of said
cargo and set-off, recouped or recovered by the other or non-carrying vessel
or her owners as part of their claim against the carrying Vessel or the Owners.
The foregoing provisions shall also apply where the owners, operators or those
in charge of any vessel or vessels or objects other than, or in addition to, the
colliding vessels or objects are at fault in respect of a collision or contact.

12. General Average and New Jason Clause
General Average shall be adjusted in London unless otherwise agreed in Box
22 according to York-Antwerp Rules 1994 and any subsequent modification
thereof. Proprietors of cargo to pay the cargo's share in the general expenses
even if same have been necessitated through neglect or default of the Owners'
servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of
the United States of America, the following Clause shall apply: "In the event of
accident, danger, damage or disaster before or after the commencement of the
voyage, resulting from any cause whatsoever, whether due to negligence or
not, for which, or for the consequence of which, the Owners are not
responsible, by statute, contract or otherwise, the cargo shippers, consignees
of the owners of the cargo shall contribute with the Owners in General Average
to the payment of any sacrifices, losses or expenses of a General Average
nature that may be made or incurred and shall pay salvage and special charges
incurred in respect of the cargo. If a salving vessel is owned or operated by the
Owners, salvage shall be paid for as fully as if the said salving vessel or vessels
belonged to strangers. Such deposit as the Owners, or their agents, may deem
sufficient to cover the estimated contribution of the goods and any salvage and
special charges thereon shall, if required, be made by the cargo, shippers,
consignees or owners of the goods to the Owners before delivery."

13. Taxes and Dues Clause (see rider clause )
(a) On Vessel -The Owners shall pay all dues, charges and taxes customarily
levied on the Vessel, howsoever the amount thereof may be assessed.
(b) On cargo -The Charterers shall pay all dues, charges, duties and taxes
customarily levied on the cargo, howsoever the amount thereof may be
assessed.
(c) On freight -Unless otherwise agreed in Box 23, taxes levied on the freight
shall be for the Charterers' account.



PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

~~14. Agency (see rider clause)~~
~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~

**15. Brokerage / Detention / Dead-freight**
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
~~In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latters' expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

**16. General Strike Clause**
(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**
(1) For the purpose of this Clause, the words:
  (a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
  (b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers if this route will be taken. In this event the Owners shall, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

**18. General Ice Clause**
Port of loading
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port, or at any time during the voyage to the port of loading, or on the Vessel's arrival, or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

Port of discharge
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law and Arbitration**
*(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, the reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

*(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.

*(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.

*(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.

*(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.

**Where no figure is supplied in Box 25 in Part I this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.



For KOC...
Authorised Sign...



**RIDER CLAUSES TO**
**M.V. THAMISSA NARREE / ASPL SINGAPORE**
**AND KOTHARI PRODUCTS LTD – INDIA**
**CHARTER PARTY DATED SINGAPORE 15 JULY 2009**

**CLAUSE 27 :**
FREIGHT: US$ 17.25  PMT FIOST

100 PERCENT FREIGHT PAYMENT INTO OWNERS NOMINATED BANK ACCOUNT PAYABLE WITHIN 5  BANKING DAYS AFTER COMPLETE OF LOADING.

CONGEN BILLS OF LADING TO BE USED
BILLS OF LADING QUANTITY TO BE TOTAL INTAKE QUANTITY FINALISED BY DRAFT SURVEY FINALIZED BY INDEPENDENT SURVEYORS APPOINTED BY BUYER/SHIPPERS, MASTER AND CHARTERERS NOMINATED SURVEYORS TO PERFORM A JOINT, SURVEY TO AS CERTAIN THE WEIGHT BY DRAFT, THE FIGURES OF SAME TO BE INSERTED IN LOAD PORT SOF AND OWNERS RESPONSIBLE TO DELIVER AT LEAST SAME QUANTITY AT DISCHPORT. SHOULD THERE BE ANY CLAIM FOR DIFFERENCE BETWEEN SHORE WEIGHT AND JOINT DRAFT WEIGHT CHARTERERS TO SETTLE THE SAME WITH RECEIVERS,  IF CLAIMS PUT ON BY THE RECEIVERS.

SIGNING/RELEASING BILLS  OF LADING MARKED 'FREIGHT PAYABLE AS PER CP" ON RCPT  OF OWNS' FRT INV (BY FAX OR BY E-MAIL). IN CASE CHRTRS RQRE "FREIGHT PREPAID' BILLS OF LADING, OWNERS TO ALLOW ISSUANCE OF SAME ON 100% FRT PAYMENT TO OWNERS BANK ACCOUNT.

FREIGHT TO BE PAID IN US DOLLARS, FREIGHT DEEMED EARNED WHEN CARGO SHIPPED ON BOARD DISCOUNTLESS AND NON-RETURNABLE SHIP AND /OR CARGO LOST OR NOT LOST.  FREIGHT TO BE PAID TO FOLLOWING OWNERS NOMINATED BANK ACCOUNT OWNERS BANK DETAILS:

> **AMARANTE SHIPPING PTE LTD**
> **A/C NO 0100 – 000192 – 01 – 4 – 022  USD**
> **FOR A/C OF DBS BANK LTD, SINGAPORE**
> **SWIFT : DBSSSGSG**
> **CHIPS : UID 034675**
> **TELEX : RS 24455**
> **THRU :  CORRESPONDENT BANK**
> **BANK OF NEW YORK NEW YORK**
> **SWIFT       : IRVT US 3N**
> **ROUTING NO    : ABA # 02100 0018**
> **PAYMENT DETAILS : FREIGHT PAYMENT TN/KP 001**

DEMM IF ANY AT LOAD TO BE SETTLED TOGETHER WITH THE FREIGHT WITHIN 5 DAYS AFTER COMPLETION OF LOADING AND DEMMURRAGE/ DESPATCH IF ANY AT THE DISCHARGE PORT TO BE SETTLED WITHIN 10 DAYS OF COMPLETION OF DISCHARGE AGAINST PRESENTATION OF FULL DOCS CHRTRS/OWNS' LAYTIME CALCULATIONS ALONG WITH SUPPORTING DOCS NOR, SOF, TIME SHEET AND FINAL FRT STMNT EVEN BY FAX AND PRIOR DELIVERY OF THE CARGO. ONCE ON DEMMURRAGE ALWAYS ON DEMMURRAGE . CURRENCY OF PAYMENT IN U.S. DOLLARS.
CHARTRS SHIPPERS AND / OR RECEIVERS SHOULD GET CARGO CERTIFICATES SHOWING TML FMP AND MOISTURE OF THE CARGO TO BE LOADED  AND PRESENTED TO THE OWNERS PRIOR LOADING SHOIWNG PROPER DATES AND TEST METHODS AS PER INTERNATIONAL REGULATIONS IF CHARTRS AND SHIPPERS FAIL TO PRESENT  SUCH CERT RESUTLING IN FAILURE OF BERTHING AND/OR LOADING OR STOIPPING OF LOADING BY MASTER OF THE CARGO ON BOARD AT LOAD PORT, CHARTS SHALL BE FOR



KOTHARI PRODUCTS LTD.

Authorised Signatory



DAMAGE OF DETENTION AT THE RATE OF USD 24000 PDPR AND ALL COSTS INCURRED, IF ANY DUE TO THE SAME , INCLUDING PORT CHARGES WILL BE ON ACCOUNT OF THE CHRTRS .

**CLAUSE NO. 28:**
TIME FOR FIRST OPENING AND LAST CLOSING OF HATCHES AND RIGGING OF THE DERRICKS / CRANES BEFORE COMMENCEMENT OF THE LOADING / DISCHARGE NOT TO COUNT AS WELL AS PREPARING SHIP GEAR FOR LOADING AND DISCHARGING OPERATIONS AT EACH PORT TO BE DONE BY VESSEL'S CREW AND TIME USED FOR SUCH OPERATIONS NOT TO COUNT AS LAYTIME.

**CLAUSE NO. 29:**
AT LOADING PORT WHEN TENDERING NOTICE OF READINESS THE VESSEL'S HOLDS/HATCHES SHALL BE SWEPT, CLEAN, READY AND SUITABLE TO RECEIVE THE INTENDED/AGREED CARGO TO THE SATISFACTION OF JOINT SURVEY BEFORE LOADING OPERATION COMMENCES. HOLD INSPECTION TO BE AS PER INDERPEMNDENT JOINT SURVEY BETWEEN CHARTERER AND OWNERS SURVEYORS. IF VESSEL IS FOUND NOT IN ALL RESPECTS READY TO LOAD AS PER ABOVE WORDING, ALL TIME LOST AS FROM THE MOMENT OF HOLDS REJECTION UNTIL MASTER TENDERS NOR NOT TO COUNT .SHOULD SOME OF THE HOLDS BE ACCEPTED, LAYTIME TO COUNT PRORATA TO THE NUMBER OF HOLDS ACCEPTED FROM COMMENCEMENT OF LOADING

**CLAUSE NO. 30:**
AT LOAD PORT AND DISCHARGE PORT, NOR TO BE TENDERED BY THE VESSEL WHETHER IN PORT OR NOT, WHETHER IN FREE PRATIQUE OR NOT, WHETHER CUSTOM CLEARED OR NOT, WHETHER IN BERTH OR NOT. ANY TIME DAY OR NIGHT SUNDAY AND HOLIDAYS INCLUDED AND LAYTIME COUNTING TO COMMENCE FROM TIME OF TENDERING NOTICE.

ALL DRAFT SURVEY AT LOADING AND DISCHARGING PORT TO BE COMPLETED WIN 3 HRS OF COMP OF LOADING OR DISCHARGHING. ANY TIME BEYOND THIS FOR DRAFT SURVEY WILL CALCULATE AS LAYTIME

12 HOURS TURN TIME ALLOWER AT LOADING AND AT DISCHARGING PORT UNLESS SOONER COMMENCED .

**CLAUSE NO. 31:**
OVERTIME AT BOTH LOADING AND DISCHARGING PORTS TO BE FOR ACCOUNT OF PARTY ORDERING THE SAME, OVERTIME ORDERED BY PORT AUTHORITIES TO BE FOR CHARTERERS. ACCOUNT BUT OVERTIME OF OFFICERS AND CREW ALWAYS TO REMAIN FOR OWNERS ACCOUNT.

**CLAUSE NO. 32:**
OWNERS GUARANTEE VESSEL GEAR TESTED AND THAT VESSEL IS IN POSSESSION OF A VALID GEAR AND TAKLE CERTIFICATE FOR THE CURRENCY OF THIS CHARTER. VESSL TO SUPPLY WHENEVER REQUIRED FREE USE OF ITS GEARS AND THE LIGHT CLUSTER FOR NIGHT WORK.

**CLAUSE NO. 33:**
VESSEL IS GUARANTEED SUITABLE FOR GRAB LOADING AND DISCHARGE NO CARGO TO BE LOADED IN OR ON TOP OF THE DEEP TANKS NOR IN BRIDGE SPACES, NOR IN ANY OTHER PLACES NOT ACCESSIBLE FOR DISCHARGE BY MEANS OF MECHANICAL GRABS. OWNERS COMMITE THAT VESSEL CAN LOAD ALL HER CARGO IN UNOBSTRUCTED SPACE EXCLUDING DEEPTANKS, BASIS HER DECLARED GRAIN CAPACITY.

**CLAUSE NO. 34:**
BOTH AT LOADING AND DISCHARGING PORTS STEVEDORES ALTHOUGH APPOINTED BY THE CHARTERERS, SHIPPERS, RECEIVERS OR THEIR AGENTS ARE UNDER THE DIRECTION AND CONTROL OF THE MASTER / CHARTERERS. ALL CLAIM FOR THE DAMAGE TO THE VESSEL OCCURING DURING LOADING AND DISCHARGING OR ANY





TIME DURING THE VOYAGE, THROUGH IMPROPER OR NEGLIGENT STOWAGE OF THE CARGO TO BE NEGOTIATED DIRECTLY BETWEEN OWNERS AND STEVEDORES. HOWEVER, CHARTERERS TO COOPERATE TO RESOLVE THE DISPUTE IF ANY AND WILL BE ULTIMATELY RESPONSIBLE FOR THE SAME.

**CLAUSE NO. 35:**
AT LOAD PORT OWNERS AND / OR MASTER TO GIVE NOTICE ON ARRIVAL LOAD PORT TO CHARTERERS AS WELL AS TO AGENT (S) FULL STYLE AS UNDER :

OWNERS AGENT AT LOAD PORT :

MANGALORE :
**Marcons Shipping (Konkan) Pvt. ltd**
5th floor, Rama Bhavan Complex, Kodialbail, mangalore:575003
(karnataka-india)
tel: 91-824-2411020/2411021    fax: 91-824-2411022
email: mangalore@marcons.co.in / mangalore@marconsgroup.com


AT DISCHARGING PORT OWNERS / MASTER TO GIVE 7/5/3 DAYS APPROXIMATE NOTICE OF E.T.A FOLLOWED BY 2/1 DAYS DEFINITE NOTICE OF E.T.A. TO THE AGENTS / RECEIVERS

OWNERS AGENTS AT DISCHARGE PORT  : REVERT

**CLAUSE NO. 36:**
CHINA IRON ORE LICENCE CLAUSE :
CHARTRS AND RECEIVERS SHOULD GET CHINA IMPORT LICENCE READY BEFORE SHIP'S ARRIVAL OF DISCHARGE PORT. CHARTS AND RECEIVERS MUST PROVIDE COPY OF THE LICENCE TO OWNERS/OWNERS AGENTS 3 DAYS IN ADVANCE PRIOR SHIP'S ARRIVAL OF DISCHARGE PORT. IF CHARTRS AND RECEIVERS FAIL TO OBTAIN SUCH IMPORT LICENCE RESUTLING IN FAILURE OF BERTHING AND DISCHARGE THE CARGO ON BOARD UPON VSL'S ARRIVAL OF DISCHARGE PORT, CHARTS AND RECEIVERS SHALL PAY FOR DAMAGE OF DETENTION AT THE RATE OF USD 24,000 PDPR .THE DAMAGE OF DETENTION WILL BECOME DUE TO OWNERS COUNTING FROM SHIP'S ARRIVAL OF USUAL WAITING PLACE OR ANCHORAGE OF THE DISCHARGE PORT AND TENDERING NOR.

OWNRS WILL HAVE A LIEN ON THE CARGO AND / OR HOLD THE CARGO AS SECURITY FOR PAYMENT OF SUCH DAMAGES OF DETENTION BEFORE THE PAYMENT IS AFFECTED IRRESPECTIVE OF THE FREIGHT INDICATIONS ON THE B/L.


**CLAUSE NO. 37:**
OWNERS TO GUARANTEE THE VESSEL IS CLASSED HIGHEST LLOYDS 100A1 OR EQUIVALENT AND ALSO TO GUARANTEE THAT THE VESSEL IS SUITABLE TO CARRY THE IRON ORE FINES IN BULK.

**CLAUSE NO. 38: - VESSEL DESCRIPTION :**

MV "THAMISA NAREE" OR NOM SUB
EX HANDY SUCCESS / CRESTI
SINGLE DECK BULK CARRIER
FLAG THAI / OFFICIAL NO. 4700- 01737 / IMO NO. 8029076
BUILT JAN 1982 SHIMONOSEKI, JAPAN
CALL SIGN -   H S C W
CLASSED LLOYDS REGISTER
DWT/DRAFT:-

For KOTHARI PRODUCTS LTD.
Authorised Signatory



SUMMER: 34,072 MT / 10,765M
LOA-178.0 / LBP -168.0 / BEAM-27.0 METRES
MOULDED DEPTH: 15.0 M, AIR DRAFT FM KEEL - ABOUT 43.5 M
GT/NT - 20,232 / 12,473
5/5 HOLDS/HATCHES
4 X 25 METRIC TONS CRANES, MAXIMUM OUTREACH ABOUT 8.5 M (LOCATION
INBETWEEN HATCHES)
ADAWOG

OWNERS CONFIRM THAT THE VESSEL IS SINGLE DECKER AND IS SUITABLE FOR GRAB
DISCHARGE AND IS WELL EQUIPPED TO CARRY THE CHARTERERS INTENDED CARGO,
VESSEL'S GEAR CRANES OF MINIMUM 25 MTS SWL EACH

OWNERS TO PROVIDE THE COPY OF THE VALID PNI CERTIFICATE, HNM CERTIFICATE,
RADIO CERTIFICATE, REGISTRY CERTIFICATE, OWNERSHIP CERTIFICATE, ISM
CERTIFICATE, SHIPS SAFETY CERTIFICATE TO THE SHIPPERS /THEIR AGENTS IF
REQUIRED PRIOR TO THE START OF LOADING FOR THE CARGO.

VESSEL IS IN ALL RESPECT READY TO RECEIVE, LOAD, CARRY AND DISCHARGE THE
INTENDED CARGO, OWNERS GURANTEE THAT VESSEL IS FULLY PNI COVERED (PNI CLUB
NAME IS NORTH OF ENGLAND) AND CLASSED UNDER LLOYDS REGISTER OF SHIPPING
EQUIVALENT TO LLOYDS 100A1 AND THAT THERE IS VALID HULL AND MACHINERY
INSURANCE COVER FOR VESSEL.   VESSELS GEAR ABLE TO WORK ALL HOLDS
SIMULTANEOUSLY AND VESSEL IS SUITABLE TO LOADING THE INTENDED CARGO AND
VESSEL HOLD AND HATCHES ARE FREE FROM ANY OBSTRUCTION / BULKHEADS ETC.


**CLAUSE NO. 39:** DELETE


**CLAUSE NO. 40:**
VESSEL TO HAVE SEPARATE CARGO(S) COMPARTMENT WISE WHICH IS TO BE TIGHT AND
STAUNCH AND ANY SEPARATION REQUIRED WITHIN COMPARTMENTS TO BE FOR
CHARTERERS ACCOUNT, DUNNAGE, SEPARATION, MATES IF REQUIRED ARE TO
CHARTERERS ACCOUNT.

**CLAUSE NO. 41:**
ANY TAXES AND/OR DUES AND/OR LEVIES AND/OR WHARF CHARGES ON CARGO TO BE
FOR CHARTERER'S ACCOUNT BOTH ENDS, AND TAXES AND/OR DUES AND OR LEVIES
AND/OR WHARF CHARGES ON VESSEL AND FREIGHT IF ANY TO BE FOR OWNER'S
ACCOUNT AT BOTH ENDS.

**CLAUSE NO. 42:**
IN THE EVENT OF THE LOSS OF TIME DUE TO BOYCOTT OF THE VESSEL BY SHORE
LABOUR OR ARISING FROM THE GOVERNMENT RESTRICTION BY REASONS OF THE
VESSEL FLAG OR THE TERMS BY WHICH MEMBERS OF THE CREW ARE EMPLOYED, OR
BY REASONS OF OPERATION OR CONTROL, LAYTIME SHALL CEASE TO COUNT AND
OWNERS / VESSEL TO BE RESPONSIBLE FOR ANY EXPENSES INCURRED.


**CLAUSE NO. 43:**
GENERAL CLAUSE PARAMOUNT, P&I BUNKERING DEVIATION CLAUSE, NEW JASON
CLAUSE, BOTH TO BLAME COLLISION CLAUSE, POLLUSION CLAUSE AND BIMCO DOUBLE
BANKING CLAUSE DEEMED TO BE INCORPORATED IN THIS CHARTER PARTY.

**CLAUSE NO. 44:** DELETE


**CLAUSE NO. 45:**

For KOTHARI PRODUCTS LTD.

Authorised Signatory



ONE SHIFTING FROM ANCHORAGE TO BERTH AND FIRST BERTH TO SECOND AT LOADING AND DISCHARGING PORT(S) TO BE FOR OWNERS ACCOUNT AND TIME UNLESS VESSEL IS ALREADY ON DEMMURRAGE THE TIME IS TO BE ON CHRTRS ACCOUNT.
SHIFTING FROM SECOND BERTH AND MORE  IF REQUIRED AT LOADPORT / DISCHARGE PORT(S) TIME AND COST ON CHARTERERS ACCOUNT.

**CLAUSE NO. 46:**
VESSEL NOT TO CHANGE OWNERSHIP BETWEEN TIME OF ARRIVAL AT LOADING PORT AND COMPLETION OF VOYAGE AND DISCHARGE AT DESTINATION.

**CLAUSE NO. 47: DELETED**

**CLAUSE NO. 48:**
WITHOUT PREJUDICE TO ANY ACT OF GOD OR FORCE MAJURE , IT IS UNDERSTOOD ONCE VESSEL ON DEMURRAGE, VESSEL WILL ALWAYS BE ON DEMURRAGE.

**CLAUSE NO. 49:**
AS CLEAN BILLS OF LADING ARE REQUIRE TO BE ISSUED AND IF THERE ARE ANY CLAUSE ON THE  MATES RECEIPT THE OWNERS / MASTER  WILL ALLOW THE RELEASING OF CLEAN BILLS OF LADING AFTER GETTING CHRTRS SIMPLE LOI  IN OWNERS PANDI CLUB WORDINGS.

IN CASE ORIGINAL B/L NOT RECEIVED BY RECEIVERS ON OR BEFORE ARRIVAL OF VESSEL AT DISPORT, OWNERS / MASTER AGREE TO DISCHARGE THE CARGO AGAINST CHARTERER'S LOI AS PER OWNERS STANDARD P& I CLUB WORDINGS DULY STAMPED AND SIGNED BY CHARTERERS BY AUTRHORISED PERSON.

CONGEN 94 BILLS OF LADING TO BE ISSUED IN STRICT ACCORDANCE WITH THE MATES RECEIPTS.

**CLAUSE NO. 50:**
IF THE  CARGO IS THE PROPERTY OF A THIRD PARTY, OWNERS  HAVE THE  SAME RESPONSIBILITY AS THEY HAVE IF THE CARGO IS THE PROPERTY OF THE CHARTERERS.

**CLAUSE NO. 51:**
CHRTRS CONFIRM THAT CARGO IS NOT BE RELEASED TO RECEIVERS WITHOUT THE PRESENTATION OF THE ORIGINAL  BILL OFLADING AND ALL FREIGHT DEMMURRAGE DETENTION IF ANY HAS BEEN PAID TO OWNERS ACCOUNT. CHRTRS  TO BE LIABLE FOR ANY CLAIMS AND OR EXPENSES INCURRED BY OWNERS  DUE TO RECEIVERS ACTIONS WITH REGARDS TO THE DELIVERY .

**CLAUSE NO. 52:**
DRAFT SURVEY FEES TO BE FOR CHARTERERS ACCOUNT AT BOTH LOADING / DISCHARGING PORTS IF ORDERED BY THE CHARTERERS.

**CLAUSE NO. 53:**
CHRTRS  GUARANTEE MAXIMUM ARRIVAL DRAFT AT LOAD AND DISCHARGE PORTS TO BE MINIMUM 12.50 MTRS SALT WATER

**CLAUSE NO. 54:**

For KOTHARI PRODUCTS LTD.

Authorised Signatory





AT BOTH ENDS MASTER'S RIGHT TO SEND N.O.R. VIA RADIO / CABLE WIBON, WIPPON, WICCON, WIFPON.

**CLAUSE NO. 55:**
OWNERS UNDERTAKE TO CONFIRM THAT THE VESSEL IS FREE FROM MARITIME LIENS OR ENCUMBERANCES OF PAST AND PRESENT OWNERS RELATING TO BE SUPPLY OF BUNKER, PROVISIONS, CREW WAGES, LOANS, INSTALLMENTS, ON SHIP / REPAIRS, OR OF ANY CREDITIORS, IN CASE OF ARREST OF THE VESSEL DURING THE CURRENCY OF THIS CHARTER AND VOYAGE, OWNERS AND MANAGER (IF MANAGERS ARE INVOLVED) SHALL MAKE REMEMDIAL ACTION AT ONCE FOR COMPLETING THIS VOYAGE AND DISCHARGE THE CARGO AT DESTINATION. ANY COST, LIABILITIES, CONSEQUENCES ARISING OUT OF SUCH ARREST SHALL BE SOLELY TO OWNERS ACCOUNT. IN CASE OWNERS DO NOT ACT FOR TIMELY RELEASE OF THE VESSEL CHARTERERS SHALL PROTECT CARGO AND EXTEND ASSISTANCE TO OWNERS AND ALSO, GET RELEASE OF THE VESSEL AND SHALL BE ENTITLED TO CLAIM OR RECOVER SUCH COSTS WITH INTERESTS AND / OR KEEPING LIEN ON THE VESSEL IN ANY APPROPRIATE COURT JURISDICTION.

**CLAUSE NO. 56:**
VESSEL IS GUARANTEED SUITABLE FOR GRAB LOADING . SHIPS GEARS TO BE USED BY CHARTERS APPOINTED STEVDORES AND CHRTRS WILL BE RESPONSIBLE FOR THE SAME.

**CLAUSE NO. 57:**
IN CASE THE OWNERS FAIL TO PROVIDE GEAR AND TACKLE IN WORKING CONDITION AS DESCRIBED IN CLAUSE 38, THE COST OF SHORE CRANES SHALL BE FOR OWNERS ACCOUNT, BUT TIME TO COUNT .

ANY TIME LOST DUE TO BREAKDOWN OF DERRICKS/CRANES TO COUNT ON PRO RATA TO THE NUMBER OF GANGS AFFECTED.

**CLAUSE NO. 58:**
OWNERS DECLARE AND CONFIRM THAT THE VESSEL IS FULLY PNI COVERED FOR THE SAID VOYAGE INCLUDING THE CARGO RISKS AND SHALL NOT BE SOLD OR SCRAPED DURING THE CURRENCY OF THE CURRENCY OF THE CHARTER. OWNERS CONFIRM THAT VESSEL IS HAVING THE VALID ISM CERTIFICATE AND CERTIFICATE OF COMPILANCE.

**CLAUSE NO. 59: DELETE**

**CLAUSE NO. 60: DELETE (NOT APPLICABLE)**

**CLAUSE NO. 61:**
LOADING / DISCHARGE RATE AGREED AS FOLLOWS:

LOAD RATE 12000 METRIC TONS PER WEATHER WORKING DAY SUNDAYS AND HOLIDAYS INCLUDED
DISCHARGE RATE 12000 METRIC TONS PER WEATHER WORKING DAY SUNDAYS AND HOLIDAYS INCLUDED

**CLAUSE NO. 62:**

OWNERS AGENTS AT LOAD AND DISCHARGE PORT. OWNERS PAYING CUSTOMARY PORT DUES AND AGENCY FEES,

For KOTHARI PRODUCERS LTD.

Authorised Signatory

AT LOADING PORT MASTER/OWNERS TO GIVE NOTICE ON ARRIVAL  MANGALORE AND AT
DISCHARGING PORT GIVE 7/5/3 DAYS APPROXIMATE NOTICE OF E.T.A FOLLOWED BY 2/1
DAYS DEFINITE NOTICE OF E.T.A. TO THE AGENTS / RECEIVERS

**CLAUSE NO. 63:**
VESSEL TO BE WITHIN 30 YEARS OF AGE, VESSEL FREE OF EXTRA INSURANCE/OVER
AGE PREMIUM DUE TO HER AGE / BUILT.

**CLAUSE NO. 64:**
CARGO / QUANTITY – FULL N COMP CARGO OF BULK IRON ORE FINES UPTO VESSEL
MAXIMUM CAPACITY /SUMMER MARKS

CARGO INTAKE TO BE DETERMINED BY  DRAFT SURVEY CARRIED OUT BY CHRTRS
SURVEYORS, OWNERS SURVEYORS/ MASTER

NO SEGREGATION OF THE CARGO REQUIRED.,

**CLAUSE NO. 65; ADDITIONAL CLAUSE**

DISCHARGE PORTS – 1 SP 1/2 SB CHINA MAIN CHINA SEA PORT  EXCLUDING RIVER PORT
- PORT TO BE DECLARED  AT LEAST 3  DAYS PRIOR PASSING SINGAPORE

OWNERS TO ALLOW CHARTERERS TO CARRY OUT THE HOSE TEST TO CHECK WATER
TIGHTNESS AND SAME TO BE CARRIED OUT BY AN INDEPENDENT SURVEYOR.  OWNERS
RIGHT TO BE REPRESENTED BY THE MASTER.

(OWNERS)                                         (CHARTERERS)
FOR AND ON BEHALF OF                  FOR AND ON BEHALF OF
AMARANTE SHIPPING PTE. LTD.       KOTHARI PRODUCTS PVT LTD
SINGAPORE                                      INDIA

                                                        For KOTHARI PRODUCTS LTD.

AUTHORISED SIGNATORY                AUTHORISED SIGNATORY

                                                        Hitendra Jain

# EXHIBIT 2

# LAYTIME CALCULATIONS

A/C KOTHARI PRODUCTS LTD

| | | |
|---|---|---|
| Name Of Vessel | MV THAMISA NAREE | |
| Cargo | 33700 | MTS |
| CIF Rate | 13000 | PMNC |
| | IRON ORE IN BULK | |
| | LOAD PORT : NEW MANGALORE | |
| Laytime Clause | | |

| | |
|---|---|
| Laytime | 02:17:24 |
| Total Laytime | 02:17:24 Days:Hrs:Mins |
| Loading | |
| NOR TND | 6:33  15-Jul-09 |
| NOR ACCEP | 6:33  15-Jul-09 |
| ATDN SHNC | 12H55 TT URG |

| Date | Day | Time Fm | Time To | Time hrs | TIME Not to Count | NTC Amount | Laytime Used | Laytime Balance | Demurrage Time | Detention Time | Time Of Laytime Exp. | Time of Completion | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16-Jul-09 | Thursday | 06:33 | 18:33 | 12:00 | NTC | 1 | 00:00:00 | 02:17:24 | | | | | 12 HOURS TURN TIME |
| | | 18:00 | 24:00 | 06:00 | | | 00:06:00 | 02:11:24 | | | | | |
| 17-Jul-09 | Friday | 00:00 | 24:00 | 24:00 | | | 01:06:00 | 01:11:24 | | | | | |
| 18-Jul-09 | Saturday | 00:00 | 24:00 | 24:00 | | | 02:06:00 | 00:11:24 | | | | | |
| 19-Jul-09 | Sunday | 00:00 | 24:00 | 24:00 | | | 02:17:24 | 00:00:00 | 00:12:36 | | 11:24 | | VSL ON DEMM FROM 19 JULY 1124LT |
| 20-Jul-09 | Monday | 00:00 | 04:00 | 04:00 | | | | 00:04:00 | | | | | |
| | | 04:00 | 24:00 | 20:00 | | | | | | 00:20:00 | | | 20 JULY 2009 2200LT BERTHING CANCELLED |
| 21-Jul-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 22-Jul-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 23-Jul-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 24-Jul-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 25-Jul-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 26-Jul-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 27-Jul-09 | Monday | 00:00 | 12:00 | 12:00 | | | | | | 00:12:00 | | | No TML certificate |
| | | 12:00 | 24:00 | 12:00 | | | | | | 00:12:00 | | | No TML certificate |
| 28-Jul-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 29-Jul-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 30-Jul-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 31-Jul-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 1-Aug-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 2-Aug-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 3-Aug-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 4-Aug-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 5-Aug-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 6-Aug-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 7-Aug-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 8-Aug-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 9-Aug-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 10-Aug-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 11-Aug-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | No TML certificate |
| 12-Aug-09 | Wednesday | 00:00 | 17:00 | 17:00 | | | | | | 00:17:00 | | | TML certificate given |
| | | 17:00 | 24:00 | 07:00 | | | | | 00:07:00 | | | | |
| 13-Aug-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 14-Aug-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 15-Aug-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 16-Aug-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 17-Aug-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 18-Aug-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 19-Aug-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 20-Aug-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | |
| 21-Aug-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 22-Aug-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 23-Aug-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 24-Aug-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 25-Aug-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 26-Aug-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 27-Aug-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 28-Aug-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 29-Aug-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 30-Aug-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 31-Aug-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 1-Sep-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 2-Sep-09 | Wednesday | 00:00 | 24:00 | 24:00 | | | | | 01:00:00 | | | | vessel At anchorage awaiting berthing-congestion |
| 3-Sep-09 | Thursday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |
| 4-Sep-09 | Friday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |
| 5-Sep-09 | Saturday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |
| 6-Sep-09 | Sunday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |
| 7-Sep-09 | Monday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |
| 8-Sep-09 | Tuesday | 00:00 | 24:00 | 24:00 | | | | | | 01:00:00 | | | Awaiting cargo certification and letter to the port |

| | DEMURRAGE | DETENTION |
|---|---|---|
| TOTAL | 21:23:36 | 29:13:00 |
| Demurrage / Detention rate Per day | $12,000.00 | $24,000.00 per day |
| Demurrage/ Detention amount | $263,800.00 | $709,000.00 |

| | DEMURRAGE | DETENTION |
|---|---|---|
| TOTAL | $972,800.00 | |

EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMARANTE SHIPPING PTE LTD.,                    :

                Plaintiff,          :          09 Civ. _____

                        :
    - against -                             :          ECF

                        :
KOTHARI PRODUCTS LTD,                          :

                Defendant.         :
------------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                 )    ss:  SOUTHPORT
County of Fairfield   )

      Charles E. Murphy, being duly sworn, deposes and says:

      1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE SOUTHERN DISTRICT OF NEW YORK

      2.      I have attempted to locate the Defendant, Kothari Products Ltd., within the Southern District of New York.  As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant.  Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

3.    I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.    This is Plaintiff's first request for this relief made to this Court.

### PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

8.    To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.      Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.      Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served; and throughout the next day, provided that process is served that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated:          September 10, 2009

Charles E. Murphy

Sworn and subscribed to before me
this 10th day of September, 2009

Notary Public

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011

—4—